[Crim. No. 7376. Second Dist., Div. Two. Sept. 24, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. EDWARD FRANK STADNICK, Defendant and Appellant.

Ernest L. Graves, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—This is an appeal by Edward Frank Stadnick from a judgment of conviction of first degree robbery (Pen. Code, § 211), following a jury trial. Appellant was found to have been armed at the time of the offense and to have suffered two prior felony convictions. The first assignment of error is to the effect that "the basic case against appellant was unconvincing." We shall assume that by this assertion appellant challenges the sufficiency of the evidence to support the verdict of the jury. ■■ An examination of the record discloses that the evidence supporting the jury's verdict is overwhelming.

A Mr. Townsend was an assistant manager of the Stater Brothers Market in Pomona on the evening of December 30, 1959. At approximately 8:30 p. m., after Mr. Townsend had removed the money from each of five registers, appellant approached him and handed him a note which stated that he was being held up and that two people were involved in the

holdup. Appellant showed the victim a gun which appeared to be a German P-38, a weapon which Mr. Townsend had carried as a side arm in World War II. At appellant's direction Townsend accompanied him to the office area where he took possession of some $1,200 in cash. While appellant was shoving his gun back under his waistband, Townsend suddenly struck at him with his fists. Appellant struck back and caused Mr. Townsend to trip over a stool and strike the back of his head against a wall. Appellant then stood over him and struck him numerous times with his fists. Townsend did not lose consciousness, and, after appellant had left, he called the police. He was thereafter hospitalized for the injuries which he had sustained.

A box boy at the store testified that he had interrupted appellant and Townsend while they were still in the front part of the store near a check stand in order to give Townsend certain coupons out of the cash registers. This witness noticed that Townsend thanked him in a rather strange voice, and he commented to another employee that it was strange Mr. Townsend would be talking to someone rather than taking the money from the registers directly to the office. This witness also remembered seeing appellant in the store at approximately the same hour some three or four days earlier.

A janitor at the store recalled seeing and speaking to appellant regarding another janitor at the side of the store around 7:30 p. m. on the night of the robbery. This witness saw him again when appellant brushed by him at about 8:45 p. m., and "he was walking pretty fast." This witness also remembered seeing and speaking to appellant twice during the preceding week at a nearby gas station where the witness also had been employed. From the information given the police by these three witnesses, it had been possible to compose a rather clear picture of appellant. Each of the witnesses was able to pick appellant out of a police lineup of approximately 12 persons some 15 days after the robbery. Townsend also recognized appellant's voice in the lineup as being the same voice as that of the man who had held him up in the market.

By way of defense, appellant introduced the testimony of three of his friends to the effect that appellant had burned his foot rather seriously in the early part of December 1959, and that he had walked on crutches at least until after Christmas. Appellant also so testified as to this injury, and asserted that he had been treated by a doctor on about eight occasions. However, he was unable to remember either the

dates of the treatments or the address of the doctor. He admitted that he was not using crutches during the last few days of December, and that he never told the arresting officers anything about this alleged condition. Appellant argues on the basis of his evidence that the witnesses for the prosecution must have been mistaken in his identification because none of them mentioned that he limped. Obviously, this was a matter for the jury to consider, and their determination will not be disturbed by a reweighing of the evidence on appeal. (*People* v. *Kemp,* 55 Cal.2d 458, 471 [11 Cal.Rptr. 361, 359 P.2d 913].)

By way of a secondary defense, appellant called a bartender who testified that he had known appellant for approximately three years and that appellant was in his bar in Los Angeles from shortly before 9 p. m. until closing time on the night of December 30, 1960. Although this witness said that he knew of appellant's foot injury some two weeks earlier, he did not notice it on the night of the 30th. He did remember, however, that appellant was short of funds and that he had loaned appellant $10. Whether this alibi should have been accepted was clearly a question for the jury, and their rejection thereof in the light of conflicting evidence will not be disturbed on appeal. (*People* v. *Williams,* 53 Cal.2d 299, 303 [1 Cal.Rptr. 321, 347 P.2d 665].)

It might well be noted that the fact that appellant could spend several hours in the bar of his friend, the bartender, without the latter's noticing the condition of his foot, reasonably could be regarded as sufficient to cast considerable doubt upon the seriousness of such condition on the date in question.

Actually appellant in his brief appears to recognize the futility of his arguing the sufficiency of the evidence in this instance, for he devotes a considerable portion thereof to a criticism of section 2051 of the Code of Civil Procedure permitting impeachment of a witness by showing that he has been convicted of a felony. He asserts that it was the prejudice developed by his admission of two earlier felony convictions, in addition to the more recent robbery conviction this day affirmed by this court in *People* v. *Stadnick, ante,* p. 767 [25 Cal.Rptr. 30] that caused the jury to find him guilty. He refers us to the Model Code of Evidence, 1942 edition, of the American Law Institute, wherein the practice of impeachment of defendants in this fashion is discussed. However, appellant's brief also recognizes that he cannot properly ask this court to declare the procedure unlawful. In this he is

correct. (*People* v. *Peete,* 28 Cal.2d 306, 312 [169 P.2d 924] ; *People* v. *Meehan,* 124 Cal.App.2d 589, 594 [269 P.2d 70], certiorari denied 348 U.S. 845 [75 S.Ct. 67, 99 L.Ed. 666].)

▆ Appellant's second and final assignment of error is the alleged misconduct of the deputy district attorney in developing the fact that one Timothy Burke shared an apartment with appellant, was allegedly drinking with appellant at the time of his alibi, was with appellant in the police lineup, and was in the state prison at the time of trial. ▆ Further, the district attorney developed the fact that appellant had not seen his ex-wife, Zella Mae Snyder, since May 9, 1960, the date upon which, as appellant admitted, he had been convicted of armed robbery in Los Angeles.

It was appellant himself on his direct testimony who brought out the fact that he lived with Burke and that his ex-wife came to the apartment frequently to care for their 3-year-old child. How the statement that appellant had last seen his ex-wife on the date of *his* prior conviction could have prejudiced him in any way is difficult to understand, since no reference whatsoever was made to *her* conviction. Thus, appellant's assertion that the jury must have concluded that she, too, was convicted, and that, therefore, he must have been a member of a robbery ring, is purest conjecture.

▆ The facts elicited regarding appellant's friend Burke were clearly relevant, for the note handed to the witness Townsend indicated that two men were involved in the holdup and it was appellant's defense that he had never been in Pomona and had been drinking with Burke in Los Angeles on the night in question. It was therefore entirely proper for the prosecution to prove that one of the witnesses at the scene of the robbery had picked Burke out of the police lineup as a man who also had been in the market a few days prior to December 30, 1959. Moreover, no objection was made to any of said questions nor was any motion made to strike any of the answers. ▆▆ Such failure to object at the time of trial generally forecloses any valid assignment of error upon appeal. (*People* v. *Lopez,* 124 Cal.App.2d 100, 105 [268 P.2d 171] ; *People* v. *Codina,* 30 Cal.2d 356, 362 [181 P.2d 881].)

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.